**ILLINOIS CORPORATE TRAVEL, INC., doing business as McTravel Travel Services, Plaintiff–Appellant,**

v.

**AMERICAN AIRLINES, INC., and IVI Travel, Inc., Defendants–Appellees.**

**No. 89–1230.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1989.

Decided Nov. 13, 1989.

Steven B. Varick and Malcolm H. Brooks, McBride, Baker & Coles, Jeffrey R. Lieb-

man, Arvey, Hodes, Costello & Burman, Chicago, Ill., for plaintiff-appellant.

Jay Conison and Alan H. Silberman, Sonnenschein, Carlin, Nath & Rosenthal, David Marx, Jr., John G. Simons and Mark L. Yeager, McDermott, Will & Emery, Clay H. Phillips and Mary P. Chapin, Russell M. Pelton, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., Steven C. McCracken, Michael J. Rider, Gibson, Dunn & Crutcher, Newport Beach, Cal., for defendants-appellees.

Before WOOD, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

American Airlines would like to ban discounting by the firms that sell its tickets, but a prohibition cannot be enforced. Under-the-table discounts, rebates by "captives" (travel subsidiaries of the firms whose employees are traveling), and tie-in sales (packages of air travel and other services such as hotels, with the price reduction on the air fare allocated for bookkeeping purposes to the hotel or car rental) are endemic. American decided to demand only what it was prepared to enforce: it issued an Addendum to the agreement all travel service operators must sign forbidding those selling its tickets to *advertise* that they offer discounts. A division of Illinois Corporate Travel, Inc., operating under the name McTravel Travel Services, advertised discounts on American; American denied it access to the plate used to issue its tickets and informed other air carriers that it would not accept tickets McTravel wrote using other carriers' plates.

McTravel sued under the Sherman Act, 15 U.S.C. § 1, and in 1986 we affirmed a decision declining to issue a preliminary injunction against American's rule. 806 F.2d 722 (7th Cir.1986). After discovery, the district court dismissed some counts of the complaint and then granted summary judgment for American. 682 F.Supp. 378, 700 F.Supp. 1485 (N.D.Ill.1988). Because our earlier opinion and the district court's two subsequent opinions rehearse the facts, we deal briefly with McTravel's contentions.

We concluded in 1986 that although a ban on price advertising is a form of resale price maintenance, the per se rule against this practice does not apply when the vendor is a genuine agent. See also *Morrison v. Murray Biscuit Co.*, 797 F.2d 1430 (7th Cir.1986); *Kowalski v. Chicago Tribune Co.*, 854 F.2d 168 (7th Cir.1988). McTravel asks us to reexamine this conclusion, observing that air travel may be decomposed into two products: the transportation, which American sells, and the reservation and ticketing service, which McTravel sells. American sets the net price it receives, without complaint from McTravel, which seeks only to advertise that it charges for its service a flat fee that usually is less than the 10% standard in the industry. Any agent—indeed any employee—could make the same distinction, however, and if it prevailed the agency exception to the rule against resale price maintenance would be defunct. Producers of goods and services may have solid reasons for putting their agents on commission rather than a fixed markup. Commissions align the agents' interests with those of the principal; they do well or poorly together, which induces the agents to work harder in the principals' interests. If the travel business is a genuine agency relation, then the principal is no less entitled to decide between commission and piecework rates than it is entitled to decide the net price for its product.

When the case was here in 1986, we thought it tolerably clear that travel service operators are the air carriers' agents. They carry no inventory and can book space only by requesting it from the carrier's computer; air carriers set the price for each ticket (sometimes changing the allocation of seats among price and travel-date-restriction categories by the hour), produce the service, deliver it direct to travelers, and take the risk of unsold seats. Although each travel service operator (conventionally called a "travel agent", a telling phrase) works with many airlines, hotel chains, and other suppliers of travel services, this is a common form of organization. Real estate agents work for many clients,

and multiple-listing services allow many agents access to the same properties; auction houses sell works of art furnished by hundreds of owners at a single sitting.

■ McTravel insists that development of the record since 1986 has produced disputes about questions of material fact, but the only fact to which McTravel points is not disputed: airlines and banks bear the flyers' credit risks, *unless* the travel service operator takes a check or gives credit without complying with the requirements of the credit card's issuer. McTravel observes that whenever it issues a ticket on the basis of a credit card number received by phone it must take the risk, because the credit card issuers will accept the risk only when the vendor obtains an imprint and signature. No one disputes this, but although an agent may decide to take more risk than it has to, a unilateral decision does not change the nature of the agency. Many a clerk at Sears has found that loss from unauthorized credit (or failure of the cash drawer to tally with the tape) comes out of his own pocket; this does not make the relation less one of employment. So too with travel service operators, especially when the risk has scarcely been realized. McTravel has identified only three reversed charges in its history. Travel service operators are "agents" for purposes of antitrust law when they sell tickets for air carriers' accounts. Bulk sales—outright purchases by the travel agents and resales to flyers—are a different matter. American does not object to advertising discounts on such tickets, on which the travel agents are standard retailers.

■ American has its own reservation and ticketing service, which not only sells air travel but also makes hotel and rental car reservations in competition with its agents. Dual distribution makes an agreement "horizontal", according to McTravel, which brands it as illegal per se under the holding of *United States v. Masonite Corp.*, 316 U.S. 265, 62 S.Ct. 1070, 86 L.Ed. 1461 (1942). *Masonite* could be read this broadly, could even be read as eliminating the difference between agents and independent distributors, but we do not understand

it so. Several makers of particle board reached an agreement under which all but Masonite retired from the business; those who quit became Masonite's "del credere agents" and sold its product at fixed prices. This was horizontal in an economically meaningful way. Producers to which consumers might turn for supply suddenly withdrew from the market. With supply down price had to rise, producing a monopoly overcharge. Although the (former) rivals contended that they were just knuckling under to the force of Masonite's patents, the Supreme Court saw a more sinister arrangement—properly so unless the patent was both broad and iron-clad, which could not be known once the former rivals started cooperating. An agreement between American and its travel agents does not reduce supply from consumers' perspective; only an agreement among the air carriers could do that.

Reduced competition among travel agents to sell American's tickets has no effects different from those of vertical restraints that courts routinely sustain. Assigning discrete territories to resellers is governed by the Rule of Reason, *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), and so is reserving particular customers for the manufacturer, to the exclusion of the dealers, *White Motor Co. v. United States*, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963). The manufacturer that reserves customers, as in *White Motor*, is as much a rival of its dealers as is the manufacturer that allows competition among dealers for all customers and joins the fray itself—and the reservation of customers is the more effective restriction on distribution, as customers see things, because it leaves each customer with only one potential seller. Dual distribution therefore does not subject to the per se ban a practice that would be lawful if the manufacturer were not selling direct to customers; antitrust laws encourage rather than forbid this extra competition.

■ Because travel service operators are the air carriers' agents, the requirement to refrain from advertising a lower price is

lawful per se, just as the obligation is lawful when fastened on one's employees. To say that regulating price advertising (like setting the price) is lawful is not necessarily to say that the whole practice is lawful. Perhaps a given arrangement does more than set the agents' price. Our 1986 opinion left open the possibility that McTravel could establish a violation of the antitrust laws under the Rule of Reason. On the first appeal McTravel argued that because any travel agent must be able to furnish tickets from all major air carriers if it is to survive, American's requirement could set the standard for the industry, as effective as any horizontal arrangement among suppliers with substantial market power. Proof has not been forthcoming. So far as the record reveals, many travel agents, including McTravel itself, continue to be discounters on all flights and aggressive advertisers of this for carriers other than American. Nothing in American's Addendum forbids a travel agent to advertise that it gives discounts on other carriers' flights. Nothing in the record suggests that other carriers have followed American's practice or that travel agents have been dissuaded from discounting the flights of American's rivals. Summary judgment on the antitrust questions therefore was appropriate.

The district court dismissed on the pleadings three claims under Illinois law, one based on the state's Consumer Fraud and Deceptive Business Practices Act, Ill. Rev.Stat. ch. 121½ ¶¶ 261–62, the others on common law rules such as the prohibition against tortious interference with prospective contractual advantage. One of the claims the court dismissed without prejudice, relinquishing its pendent jurisdiction. The other two are preempted, the court held, by 49 U.S.C.App. § 1305(a)(1), which provides:

[N]o State or political subdivision thereof ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under Title IV of this chapter to provide air transportation.

McTravel does not dispute the propriety of resolving questions of preemption under the pendent jurisdiction. See *Graf v. Elgin, Joliet & Eastern Ry.*, 790 F.2d 1341, 1345–48 (7th Cir.1986); cf. *LaBuhn v. Bulkmatic Transport Co.*, 865 F.2d 119 (7th Cir.1988). Neither does it dispute the holding of *Anderson v. US Air, Inc.*, 818 F.2d 49 (D.C.Cir.1987), that "law, rule, regulation, standard, or other provision" includes common as well as statutory law. It argues instead that state regulation or prohibition of contracts between air carrier and agent forbidding price advertising does not "relat[e] to rates" within the meaning of § 1305(a)(1). Yet McTravel's antitrust claim depended on the proposition that to forbid the advertising of discounts *is* to set price (at least to influence it), a proposition with substantial support in both law, *United States v. Gasoline Retailers Ass'n*, 285 F.2d 688 (7th Cir.1961), and economics. Cf. *Bates v. State Bar of Arizona*, 433 U.S. 350, 377–78, 97 S.Ct. 2691, 2705–06, 53 L.Ed.2d 810 (1977).

Price advertising surely "relates to" price; the "relating to" language in § 1305(a)(1) substantially increases the extent of preemption. *Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408, 1415 (9th Cir.1984). (The same "relating to" language in ERISA has led to a startlingly broad preemption of state laws. E.g., *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).) Although 49 U.S.C.App. § 1506 preserves state common law from implicit preemption, see *Bieneman v. City of Chicago*, 864 F.2d 463, 470–73 (7th Cir.1988), the preemption here is express rather than implied. If the state law relates to "rates, routes, or services", the absence of contrary federal law is irrelevant.

McTravel's submission that to advertise a rebate of its commission is not to advertise a lower price for air travel is a reprise of its argument that air travel and ticket dispensing are distinct services with separate prices; we rejected this when dealing with the antitrust claim, and it is no more compelling now. Both American and McTravel sell tickets nationwide. Section

1305(a)(1) ensures that the prices at which these sales occur to consumers, and the accompanying advertising, can proceed under a legal standard uniform nationwide. We need not consider the extent to which state laws may control deceptive advertising, require disclosures, or enforce (as opposed to upset) contracts between carriers and agents; it is enough to say that no state may require an air carrier to deal with a would-be agent who refuses to respect a contract restricting advertising of discount prices.

AFFIRMED.