485 So.2d 514 (1986)
Elphage KEYS Individually and as Administrator of the Estate of his minor child Elphage Keys, Jr.
v.
MERCY HOSPITAL OF NEW ORLEANS, et al.
No. CA-3113.
Court of Appeal of Louisiana, Fourth Circuit.
February 20, 1986.
*515 Donna S. Cummings, Cummings & Cummings, New Orleans, for plaintiff-appellee.
William S. Penick, Lemle, Kelleher, Kohlmeyer, Hunley, Moss & Frilot, New Orleans, William R. Carruth, Jr., S. Alfred Adams, Carruth and Cooper, Baton Rouge, for defendants-appellants.
Before WILLIAMS and ARMSTRONG, JJ., and PRESTON H. HUFFT, J. Pro Tem.
ARMSTRONG, Judge.
The defendants, Fran West and her employer, Mercy Hospital, are appealing the trial court's judgment awarding plaintiff, Elphage Keys, damages totalling $350,000 ($200,000 to Mr. Keys and $150,000 to his child). The defendants dispute the trial court's finding of liability and the amount of the award.
The record reflects that on November 27, 1977 plaintiff's wife, Yolander Keys, who was at or near term with her first pregnancy, went out to dinner with her husband. They returned home at about 10:00 p.m. and her membranes ruptured soon thereafter. As previously instructed by her obstetrician, Dr. Joseph, they went to Mercy Hospital where she was admitted. Dr. Joseph examined the patient at about 6:00 a.m. the next day and diagnosed fetal distress on the basis of meconium-stained fluid, fetal tachycardia, and high maternal temperature. A cesarean section was therefore ordered. Mrs. Keys insisted on a general anesthetic instead of the epidural recommended by Dr. Joseph. Fran West, a nurse anesthetist, was assigned to the case by the two staff anesthesiologists, Dr. Richard Zepernick and Dr. James Wall.
The procedure commenced at 7:05 a.m. with Ms. West's administration of Pentothal to put the patient to sleep. Anectine was then used to paralyze her. As soon as the drugs had taken effect, Ms. West told Dr. Joseph that he could start operating whenever he wished. Dr. Joseph was anxious to take the baby from the mother's womb and therefore started making the incision immediately. At this time, approximately 7:06 or 7:07 a.m., West attempted for 15-20 seconds to insert an endotracheal tube in the patient's throat in order to supply oxygen and prevent regurgitation. She was unsuccessful in this attempt. Since the patient was paralyzed and could *516 not breath on her own, West gave the patient oxygen through a breathing mask and sent another nurse to get Dr. Zepernick. Before Zepernick arrived and a few seconds after West placed the mask over the patient's face, the patient regurgitated into the mask. West immediately suctioned her mouth and throat. When Zepernick arrived at approximately 7:08 a.m., he suctioned her again, inserted an endotracheal tube, and flushed her lungs out with a special solution. None of this interfered with Dr. Joseph's surgery at the other end of the table, and he delivered a baby boy in very poor condition at 7:24 a.m. Mrs. Keys left the operating room in what appeared to be good condition, but subsequently developed bronchopneumonia as a result of aspirating fluid into her lungs. Mrs. Keys died on December 12, 1977.
Mr. Keys sued Fran West and her employer, Mercy Hospital, Dr. Joseph, and Drs. Zepernick and Wall, on behalf of himself and his son. All of the defendants were qualified health care providers under R.S. 40:1299.41, et seq., so the matter was presented to a medical review panel consisting of two obstetricians, Dr. Philip Krupp and Dr. Louis Levinson, and an anesthesiologist, Dr. O.J. Renegar. In a unanimous decision, the panel found that none of the defendants had violated the applicable standard of care. This suit was then filed. The plaintiff's claim against Dr. Zepernick and Dr. Wall (who died before the trial) was dismissed on motion for failing to answer interrogatories. Dr. Joseph was voluntarily dismissed from the suit on the morning of trial.
On March 1, 1984 the trial court rendered judgment against Fran West and Mercy Hospital. The defendants' motion for a new trial was denied, but the judgment was amended in accordance with R.S. 40:1299.42 B(2) to limit the defendants' obligation to $100,000 and reserve the plaintiff's right against the Patient's Compensation Fund for the balance. This appeal followed. The Patient's Compensation Fund intervened as an appellant.
On appeal, the defendants argue that the record does not support the trial court's finding that West was negligent in telling the physician, before the endotracheal tube had been inserted, that he could begin the operation. They also argue that the award was excessive.
Under the provisions of LSA-R.S. 9:2794 A, the plaintiff herein had the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians or dentists licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians or dentists within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
Because the field of anesthesiology is a specialty, a "plaintiff seeking to prove that a medical specialist failed to adhere to these standards of care or skill is not limited to expert medical testimony by witnesses practicing or familiar with the standards of care and skill within the defendant specialist's community or locality." Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331, 1340 (La.1978).
In the instant case, Drs. Levine, Zepernick, Renegar and Adriani, all anesthesiologists, testified as to the standard of care exercised within the specialty of anesthesiology. The latter three doctors further testified specifically as to the standard of *517 care required of anesthesiologists in the New Orleans area.
Dr. Levine, an anesthesiologist from Chicago, Ill., testified that West was negligent in attempting the intubation without an anesthesiologist assisting her. He did, however, acknowledge that different locales have differing standards as to the necessity of having an anesthesiologist present during the intubation procedure. He also testified that West was negligent in not utilizing one of the following procedures which are designed to prevent regurgitation: 1.) pumping out the patient's stomach while the patient is awake, 2.) inserting the endotrachael tube while the patient is awake, and 3.) applying pressure to the cricoid cartilage.
Drs. Zepernick, Renegar and Adriani disagreed with Levine on each of the above points and testified that under local standards West was in no way negligent in either failing to utilize one of the procedures discussed by Levine or beginning the intubation process without an anesthesiologist at her side.
All four anesthesiologists did agree, however, that West was not negligent in informing Dr. Joseph that he could begin the operation prior to her having successfully intubated the patient. They further testified that West's inability to intubate the patient was not negligence. Levine and Zepernick both admitted that they too had on occasions been unable to intubate a patient and were required to seek help in doing so. West similarly admitted that she had on rare occasions had trouble with intubation. West received no specific instructions from either Wall or Zepernick as to intubating the patient, and she followed Mercy's standard operating procedure for just such situations.
Dr. Angelica, an expert in the field of internal medicine, testified that the best defense for aspiration is to prevent it in the first place. West testified that intubation of the endotrachael tube was one of the best ways to prevent aspiration, and Dr. Adriani testified that if the tubation procedure had proceeded as planned on the first attempt, the patient would not have died.
Additionally, West and each anesthesiologist testified that pregnant women near term were high risks for regurgitation as such patients often have full stomachs. West testified that she had been trained to treat pregnant patients as having full stomachs. Adriani testified that if he knew an OB patient had a full stomach he would not instruct the surgeon to begin the operation until the patient had been successfully intubated. But he also testified that it was almost impossible to know if an OB patient had a full stomach.
In his reasons for judgment the trial court was particularly concerned with West's failure to adequately take into account the possibility that the patient's stomach might be full. Although the trial court made the specific finding that West was negligent in telling Dr. Joseph that he could begin the operation prior to intubation, it is nevertheless abundantly clear that the crucial point for the trial court was the fact that OB patients are high risks for regurgitation and West failed to take appropriate precautions.
It is well settled that "appellate review of fact is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous)." Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). It is also well established, however, that an appellate court is required to render "any judgment which is just, legal, and proper upon the record on appeal". LSA-C.C.P. art. 2164; Florent v. Florent, 393 So.2d 912 (La.App. 4th Cir.1981). To this end, an appellate court is not required to reverse a correct judgment merely because the trial court gave a wrong or insufficient reason for judgment. See Burton v. Brewer, 7 La. Ann. 620 (La.1852); Pitre v. Guidry, 147 So. 767 (La.App. 1st Cir.1933).
It is clear from a reading of the entire record that the trial court's finding *518 that West was negligent in informing Dr. Joseph, prior to intubation, that he could begin the operation, was manifestly erroneous. No evidence was adduced at trial to support such a finding. There was, however, ample evidence at trial to support the trial court's determination of negligence on the part of the defendants.
The trial court specifically stated in its reasons for judgment that there was a variance in the expert testimony produced by plaintiff and defendant and that the court agreed with plaintiff's expert. Plaintiff's expert testified that under the facts of this case West, a nurse anesthetist, should not have begun the intubation procedure without the anesthesiologist by her side. Dr. Zepenick, who along with Dr. Wall set the anesthesiology policies for Mercy, testified that he knew pregnant women near term were high risks for regurgitation and that intubation was not always successful on the first try. Although Levine testified as to numerous other preventative measures that could have been used, none were so utilized. The only preventative measure required by Mercy and, accordingly, used by West, was insertion of the endrotrachael tube after the patient was anesthetized.
Given the above facts, it is clear that defendants were negligent in not taking sufficient measures to prevent or lessen the possibility of regurgitation. The hospital should have required Ms. West to utilize, in attempting to intubate a patient who poses a high risk of regurgitation, one of the three measures set forth by Dr. Levine. Alternatively, the hospital should have required that both an anesthesiologist and anesthetist be present to jointly intubate such a patient. In the interval between West's asking another nurse to get Dr. Zepernick and Dr. Zepernick's arrival in the operating room, Mrs. Keys aspirated the material that would eventually cause her death. Accordingly, we find that the trial court's holding that the defendants were negligent was not manifestly erroneous.
With respect to the issue of quantum, the trial court is vested with much discretion in the assessment of damages, LSA-C.C. art. 1934(3); See Reck v. Stevens, 373 So.2d 498 (La.1979); and before a Court of Appeal can disturb an award by a trial court the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La. 1976). Our review of the record reveals no such abuse of discretion.
The record reflects that Mr. and Mrs. Keys had been happily married approximately six years prior to the incident in question and that Mrs. Keys was pregnant with their first child. Upon entering the hospital Mrs. Keys had been in excellent physical condition. She died fourteen days after the operation. Mrs. Keys was conscious a portion of the fourteen day period and was in great distress over the wellbeing of her newborn child which she was not allowed to see. The child, of course, will be without its mother for its entire life. Under these circumstances we can not say that the trial court's award was manifestly erroneous.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
WILLIAMS, J., concurs with reasons.
WILLIAMS, Judge, concurring with reasons.
The troublesome aspect this case presents is that the defendants have been found negligent not because the crash induction maneuver was performed negligently, but rather, negligence was based on the failure of the defendants to successfully establish that the use of the crash induction maneuver by an anesthesist unassisted by an anesthesiologist which is allowed by New Orleans specialists conforms with the nationally recognized standard of care. In essence, the trial court has determined that the procedures utilized by New Orleans specialists are substandard, because, as pointed out by Dr. Zepernick, *519 even if he had been present during the initial intubation, he would have utilized the same procedure as did Ms. West. In finding the defendants negligent, the trial court was apparently impressed with the plaintiff's expert, Dr. Levine, who practices in Chicago and based its decision on his testimony to the exclusion of the defendants' experts who practice in the New Orleans area. I question this result because I do not feel it necessarily follows that because a Chicago specialist may practice his speciality differently from that as it may be practiced in New Orleans, then the procedures followed by a New Orleans specialist automatically fall below the accepted national standard of care. See generally, Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331 (La.1978). But, inasmuch as the expert testimony in this case only established the standard of care as practiced in New Orleans and Chicago, the trial court was limited by the available evidence in determining whether each procedure conformed with the nationally accepted standard of care. This determination could have been more readily established had the defendants introduced the testimony of a specialist who practices outside the New Orleans to corroborate the testimony of the local specialists. Though I do not find that the use of the crash induction maneuver by an anesthesist unassisted by an anesthesiologist necessarily falls below the national standard of care as recognized in 1977, I am nevertheless bound by the trial court's factual determinations based on the available evidence. Seeing no manifest error in the trial court's reliance on Dr. Levine's testimony, I concur in the result reached by the majority.