William **RICHARDSON**, Betty P. Jones, Iris R. Robertson and Beverly Collier,

v.

**ADVANCED CARDIOVASCULAR SYSTEMS, INC.**, Nick Moustakas, M.D. and Christian Health Ministry, Inc. d/b/a Or Being Mercy & Baptist Medical Centers.

Civ. A. No. 94–1926.

United States District Court, E.D. Louisiana.

Sept. 14, 1994.

J. Wayne Mumphrey, Law Office of J. Wayne Mumphrey, Chalmette, LA, Denise Marie D'Aunoy, Law Offices of G. Michael Grosz, III, Gretna, LA, George Narcisse Bischof, Jr., Law Offices of J. Wayne Mumphrey, Chalmette, LA, for plaintiffs.

John Francis Olinde, Charles P. Blanchard, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, for Advanced Cardiovascular Systems, Inc.

Charles A. Boggs, Boggs, Loehn & Rodrigue, New Orleans, LA, for Nick Moustakas, M.D.

Judith Melonie Wilkinson, Adams & Reese, New Orleans, LA, Deborah Cunningham Foshee, Kathy Manchester Borbas, C. Peck Hayne, Jr., Gordon, Arata, McCollam & Duplantis, New Orleans, LA, for Christian Health Ministry, Inc.

## ORDER & REASONS

CHARLES SCHWARTZ, Jr., District Judge.

Before the Court are the following motions in the captioned matter:

(1) Plaintiffs, William Richardson, Betty P. Jones, Iris R. Robertson and Beverly Collier's Motion to Remand.

(2) Defendant Mercy Hospital's Motion to Dismiss for Failure to State a Claim or Alternatively for Summary Judgment.

In response to each of the above motions, formal opposition was filed.[1] The motions were set for oral hearing on August 31, 1994. However, the Court upon reviewing the record and the comprehensive submissions of

---

1. The Court has had the benefit of extensive supplemental pleadings filed by all parties in this case.

the parties has determined that oral argument would not aid in the disposition of these matters and deemed the motions submitted on the briefs. For the reasons herein stated below, the Court DENIES plaintiff's Motion to Remand, and the Court GRANTS defendant Mercy Hospital's Motion for Summary Judgment, dismissing plaintiffs' claims against it as premature.

## BACKGROUND

The captioned case involves a medical casualty claim for the wrongful death of the plaintiffs' mother during performance of an angioplasty surgical procedure at Mercy Hospital on April 28, 1993. Plaintiffs allege that during performance of the angioplasty procedure, a medical device designated as a 2.5mm ACSRX streak balloon, lot number 3030851, manufactured by the defendant, Advanced Cardiovascular Systems, Inc. ("ACS"), and purchased and supplied by defendant, Christian Health Ministry, Inc. d/b/a or being Mercy + Baptist Medical Centers ("Mercy Hospital"), was inserted to attempt destenosis of the coronary of the plaintiffs' mother. Plaintiffs further aver that the ACS balloon failed during the procedure and that the surgeon on stand-by, defendant, Nick Moustakas, M.D. ("Dr. Moustakas") refused to perform open heart surgery to remove the dislodged catheter and do by-pass surgery. Plaintiffs also claim that defendant, Moustakas and defendant, Mercy Hospital intentionally and with malice engaged in a cover-up scheme which included disposing and/or altering records and other evidence of the incident.

On April 28, 1994, plaintiffs filed a Petition for Damages for Wrongful Death in Civil District Court for the Parish of Orleans, State of Louisiana. With the consent of Mercy Hospital and Dr. Moustakas, ACS filed a Notice of Removal on June 9, 1994. On August 1, 1994, plaintiffs' Motion to Remand was filed. Subsequently, all three defendants timely filed formal opposition to plaintiff's Motion to Remand, defendant, Mercy Hospital filed the motion before the

Court, and defendant, Dr. Moustakas filed a Motion to Dismiss. Plaintiffs also filed formal opposition to defendants' Motion for Summary Judgment and Motion to Dismiss. After reviewing all of the aforementioned pleadings, the Court addresses the matters before it in the following manner.

## MOTION TO REMAND

It is well settled that a defendant may remove a state court action to federal court only if the action originally could have been filed in federal court.[2] Original filing in federal court is permitted if there is diversity of citizenship between the parties [3], or if there exists a federal question.[4] Defendant, ACS removed the case at bar on the basis that the suit is an action of which the federal court has original jurisdiction under the provisions of 28 U.S.C. § 1331, and one that lies within the provisions of 28 U.S.C. § 1441, in that it is a civil action arising under the laws of the United States, specifically, the Medical Device Amendments ("MDA") and the Safe Medical Devices Act ("SMDA") to the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 et seq., 21 C.F.R. §§ 800, et seq.[5]

Plaintiffs contend that the captioned matter was improperly removed to this court because there is no federal question and all defendants are not diverse from the plaintiff. Plaintiffs further aver that the basic principle marking the boundaries of the federal district courts is the "well-pleaded complaint rule", which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint, *Gully v. First National Bank,* 299 U.S. 109, 112–113, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). Plaintiffs also contend that the mere existence of a federal defense does not provide a sufficient basis for remand. *Tax Board of the State of California v. Construction Laborers Vacation Trust for Souther California,* 463 U.S. 1, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983). Since they did not raise a claim directly under

---

**2.** 28 U.S.C. § 1441(a).

**3.** 28 U.S.C. § 1332(a).

**4.** 28 U.S.C. § 1331.

**5.** Defendants' Notice of Removal filed June 9, 1994, Paragraph 6, page 2.

federal law in their complaint, plaintiffs argue that there is no basis for which this Court can have jurisdiction. However, plaintiffs fail to note the obvious defect in their challenge to the removal; the Motion to Remand was untimely filed.[6]

■ Where a plaintiff moves to remand more than thirty days after a notice of removal is filed, the sole permissible basis for remand is lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). The plaintiff has thirty days in which to challenge removal, after which time, the plaintiff is considered to have waived all procedural defects in the removal. *Williams v. AC Spark Plugs*, 985 F.2d 783, 787 (5th Cir.1993). In the case at bar, notice of removal was filed on June 9, 1994. The plaintiffs' Motion to Remand was not filed until August 1, 1994, which is well beyond the requisite thirty-day time period. Therefore, the Court is of the opinion that all procedural defects in the removal have been waived and the sole issue for its determination regarding the issue of remand is whether the Court has original subject matter jurisdiction.[7]

■ Ordinarily, federal question jurisdiction is determined by the well-pleaded complaint rule, which looks to the complaint in determining subject matter jurisdiction. *Gully, supra*. However in certain instances, the doctrine of "complete preemption" supplants the general rule. In those cases in which Congress has so completely pre-empted a particular area, any civil complaint raising the select group of claims is necessarily federal in character. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (ERISA provision establishes exclusive federal cause of action for suits involving wrongful termination of disability benefits and therefore removal is permitted). In *Trans-World Airlines, Inc. v. Mattox*, 897 F.2d 773, 778–79 (5th Cir.1990), *cert. denied*, 498 U.S. 926, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990) (state laws

proscribing deceptive advertising are preempted by federal statute in the Deregulation Act when a state attempts to enforce such laws against the advertising of fares by interstate and international airlines), the Fifth Circuit held that the key in determining whether removal is appropriate under the complete preemption doctrine is the "intent of Congress" and not whether Congress provided a substitute federal remedy for the preempted state remedy.

Since the Supreme Court first addressed preemption in the context of removal in *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n. of Machinists and Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (collective bargaining agreement falls within the pre-emptive force of § 301 of Labor Management Relations Act and therefore removal is permitted) the jurisprudence has carefully examined the doctrine of preemption. If a federal cause of action completely preempts a state cause of action, any complaint that is within the scope of the federal cause of action necessarily 'arises under, federal law, and similarly, any claim purportedly based on that pre-empted state claim is considered, from its inception, a federal claim, and therefore arises under federal law also. *Caterpillar v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987) (complaint asserting breach of individual employment contracts was not completely preempted by federal labor law governing collective bargaining agreements and therefore removal was improper). The *Caterpillar*[8] decision exemplifies the careful attention courts have used to meticulously mark the boundaries of complete preemption.

### Medical Devices Act

■ The United States Constitution provides the foundation upon which preemption is built: Federal law "shall be the supreme Law of the Land; and the judges in every State shall be bound thereby, any Thing in

---

6. 28 U.S.C. § 1447(c) provides that a motion to remand must be made within 30 days after the filing of the notice of removal.

7. *See generally, In re Shell Oil Co.* ("Shell II"), 932 F.2d 1523, 1527 n. 6, n. 7 (5th Cir.1991).

8. *See, Caterpillar*, 482 U.S. at 391, n. 4, 107 S.Ct. at 2429, n. 4. (specifically disagreeing with the Court of Appeals' reasoning that a case may not be removed to federal court unless the federal cause of action relied upon provides plaintiff with a remedy); *see also, Avco Corp. v. Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968).

the Constitution or Laws of any State notwithstanding." U.S. Const. art. VI, cl 2. Therefore, state laws that conflict with federal laws and regulations are preempted.

Congressional intent governs the determination of whether a conflict exists between state and federal laws and regulations. Thus, preemption does not occur unless the clear and manifest purpose of Congress was to supersede State police powers, or "where the scheme of federal legislation is so comprehensive 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1419–20 (5th Cir.), *cert denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993) (citations omitted). Congress may express its intention explicitly in the language of the statute[9], or implicitly through the passage of a comprehensive statutory scheme which extensively covers the regulatory field.[10] In the case at bar, the express preemption provision in the MDA forecloses inquiry into implied preemption, because Congress has explicitly declared its preemptive intent.

The preemptive force of the Medical Device Amendments to the Federal Food, Drug and Cosmetic Act lies in the following provisions:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.[11]

Furthermore, Section 306h addresses the FDA's power to remove unsafe devices from the marketplace. It provides, "a device . . . [that] presents an unreasonable risk of substantial harm to the public health," may be subject to añ order by the Secretary requiring the repair, replacement, refund or recall of the device." From this language, it is clearly evident that Congress "gave the FDA comprehensive regulatory authority over medical devices for the first time." *Slater v. Optical Radiation Corp.*, 961 F.2d 1330, 1331 (7th Cir.) (citing H.R.Rep. No. 853, 94th Cong., 2d Sess. 1, 6–13 (1976)), *cert. denied,* —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992). The broad sweeping language of the MDA provisions clearly encompasses common law tort actions, such as the one alleged by the plaintiffs in this case, within its preemptive scope. *Stamps,* 984 F.2d at 1421.[12]

The MDA classifies medical devices into "three categories based upon the degree of risk to the public health and safety":[13] from Class I, which has the least restrictions and regulations, to Class III, which has the most restrictions and regulations." A Class III device is one which presents a potential unreasonable risk of illness or injury such that extensive regulation is required to ensure reasonably safe use. 21 U.S.C. § 360c(a)(1)(C).

FDA regulation of the design and manufacture of Class III devices is extensive. For example, § 360e(c)(1) requires FDA evaluation and pre-marketing approval ("PMA") of the components, ingredients and properties and of the principle or principles of operation of the device, of the proposed labeling of the device, and of the methods used in, and the facilities and controls used for, the manufacture and processing of such device. Section 360e(d)(2) provides that the FDA "shall deny

9. *Id.*

10. *See also, Fidelity Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

11. 21 U.S.C. § 360k(a); § 360k(b) further provides that the Secretary of Health and Human Services "may, by regulation . . . , exempt" certain State requirements that meet specific criteria. It is undisputed that no applicable exemption has

been promulgated in this instance. *See generally* 21 C.F.R. pt. 808 (listing no exemptions for Louisiana).

12. *See also,* 21 C.F.R. § 808.1(b) ("court decisions" come within the scope of this provision).

13. S.Rep. No. 33, 94th Cong., 1st Sess. 10 (1975), *reprinted in* 1976 U.S.Code Cong. & Admin.News 1070, 1079.

approval" of an application for premarket approval if "there is a lack of a showing of reasonable assurance" that the device is "safe" and "effective," or if the methods used in the manufacture of the device do not conform to current "good manufacturing practice." Furthermore, where "a device has or may have contributed to the death of a patient at" a hospital, the hospital is required to report the information to the FDA.[14] The MDA further provides that those adversely affected by certain orders or rulings may seek judicial relief with the United States Court of Appeal for the District of Columbia, or "for the circuit wherein such person resides or has his principal place of business." § 360g(a). In requiring FDA approval of manufacturing methods as well as labeling and packaging, the entire MDA scheme for Class III devices endeavors to determine and fully regulate the intended purpose of the device, and to ensure a reasonable level of safety for its users. The section further illustrates that Congress intended any disputes involving the MDA to be resolved by the federal courts. It is undisputed that the device at issue in this case is a Class III device which falls within the full rigors of the above Congressional regulations.

In accord with the above, the Fifth Circuit expressly rejected an argument that Congress did not intend to preempt state tort law remedies when it enacted the MDA. *Stamps*, 984 F.2d at 1420. Further, the Fifth Circuit explained that a state tort cause of action will be preempted if, in the context of the particular case, it (1) constitutes a requirement different from, or in addition to, any requirement the MDA makes applicable to the device at issue and (2) relates to either (a) the safety or effectiveness of the device or (b) any other matter included in a requirement made applicable to the device by the MDA. *Id.*, at 1421.

As in *Stamps*[15], the central determination in the case at bar is "whether the legal duty that is the predicate of the common law damages action constitutes a requirement relating to the safety or effectiveness" of the 2.5mm ACSRX streak balloon, lot number 3030851, which was used during the angioplasty procedure giving rise to this action. There can be no reasonable response other than an affirmative declaration that plaintiffs' contention against ACS is grounded upon the safety and effectiveness of the particular medical device used. In fact, the essence of the plaintiffs' claims is that the medical device was ineffective and unsafe.

Plaintiffs in this case may not defeat removal by 'artfully' omitting reference to essential federal issues in the complaint. *Eitmann v. NOPSI*, 730 F.2d 359, 365 (5th Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984). Permitting the plaintiffs to litigate their claims in state court would allow them to circumvent the conclusions of the FDA and its expert panels on what constitutes a safe medical device, and more generally to evade the precise procedures intended to limit and define the regulation of medical devices. The safety and efficacy of medical devices would no longer be subject to compliance with federal standards if remand were permitted. This Court refuses to allow these results and the role of removal to be undermined in this manner.

In summary, while the Court acknowledges that a preemption defense is generally not sufficient to permit removal under the well-pleaded complaint rule, where the scheme of federal legislation and regulation is so comprehensive, such as the MDA, that federal law effectively, even if tacitly, displaces and subsumes all state-law claims, federal-question removal is allowed.[16] Otherwise, here the FDA would be thwarted in its

---

**14.** *See* 21 U.S.C. §§ 360i(b)(1)(A), 393(b)(2); *see also* H.R.Rep. No. 808 101st Cong., 2d Sess. 19–22 (1990), *reprinted in* 1990 U.S.Code Cong. & Admin.News 6305, 6312–15; H.Conf.Rep. No. 959, 101st Cong., 2d Sess. 23–24 (1990), *reprinted in* 1990 U.S.Code Cong. & Admin.News 6327, 6328.

**15.** 984 F.2d at 1422.

**16.** *See generally Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (permitting removal of general common-law contract and tort claims that were preempted under ERISA); *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (permitting removal of state-law claims preempted by § 301 of the Labor Management Relations Act).

Congressionally-mandated duty to determine what is or is not a safe medical device.

After a thorough examination of the underlying rationale of the Congress' enactment of the MDA, this Court finds that the MDA provisions preempt the plaintiffs' state law claims. Although this suit purports to raise only state law claims, it is necessarily federal in character by virtue of the clearly manifested intent of Congress. It, therefore, arises under the laws of the United States and is removable to federal court by the defendants, pursuant to 28 U.S.C. § 1441.

**Supplemental Jurisdiction**

 Having first determined that the Court has subject matter jurisdiction under the provisions of 28 U.S.C. § 1331, this Court has supplemental jurisdiction over all state-law claims, pursuant to 28 U.S.C. § 1367.[17] The Court also notes that section 1367(c) provides in pertinent part that district courts may decline to exercise supplemental jurisdiction over a claim, if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. However, in the absence of any of these four factors, supplemental jurisdiction *must* be exercised. *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1569 (11th Cir.1994). None of the conditions enumerated above are met in the instant case. There are no novel or complex issues. All claims are closely intertwined with those which are pre-empted by federal defenses, and the Court has not dismissed all federal claims. Finally, there are no exceptional circumstances or other compelling reasons for declining jurisdiction. Furthermore, the statute does not mandate

this Court to decline jurisdiction, but instead provides that it "may" decline jurisdiction. Because all the plaintiffs' claims arise from the same common nucleus of operative facts[18], this Court to refuses to emasculate the spirit of judicial economy and decline jurisdiction over the supplemental claims. For all of the above reasons, and in the interest of justice, this Court believes that remand to the state court is not appropriate in this case and therefore, plaintiffs' Motion to Remand is hereby DENIED.

**MERCY HOSPITAL'S MOTION FOR SUMMARY JUDGMENT**

The Court now turns its attention to the ancillary claims against defendant, Mercy Hospital, and Mercy Hospital's motion to dismiss such claims as premature. In its evaluation of the pleadings, this Court has looked beyond the four corners of the pleadings and considered exhibits attached to the pleadings in connection with this matter and therefore views the motion from defendant Mercy Hospital as a Motion for Summary Judgment.

 State substantive laws apply in federal court, except where the Constitution, treaties or statutes of the United States otherwise require or provide. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). While this Court has jurisdiction over the case at bar because of the MDA statutes addressed above, the Court must apply Louisiana law to those pendent claims which are not directly governed by federal statutes. The pendent claims involve issues which previously have been extensively covered under state laws, and this Court finds no reason to differ with the guidance promulgated by the Louisiana legislature and state courts.

---

**17.** 28 U.S.C. § 1367 provides in pertinent part, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ..."

**18.** See *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 86 S.Ct. 1130, 1138, 16

L.Ed.2d 218 (1966) (holding that a federal court has the power to exercise jurisdiction over an entire action, including state law claims, when the source of the federal claims and state law claims in the action "derive from a common nucleus of operative fact" and are "such that [plaintiff] would ordinarily be expected to try them all in one judicial proceeding."

In their complaint, plaintiffs allege that defendant, Mercy Hospital "negligently mishandled and damaged" the medical device used. Plaintiffs also set forth in their petition a litany of allegations that Mercy Hospital and/or Dr. Moustakas were involved in an intentional scheme to cover-up and exonerate themselves from liability.[19] Among the many claims, plaintiffs assert that Mercy Hospital "intentionally altered or disposed of evidence" and "intentionally misled the plaintiffs' deceased and Medicare to believe that its Catheterization Laboratory met the standards for the operation of such a facility." Additionally, plaintiffs aver that the risk management department personnel of Mercy Hospital "intentionally" interfered with an autopsy for which plaintiffs had contracted. Finally, plaintiffs seek damages for the intentional infliction of emotional distress.[20] The Court shall first address the negligence claim and then treat those allegations against the hospital which are characterized by plaintiffs as intentional tortious conduct.

**Application of the Medical Malpractice Act:**

■ At all times pertinent to this matter Mercy Hospital was and is a qualified health care provider under the Medical Malpractice Act.[21] Therefore, under Louisiana law, Mercy Hospital is entitled to the benefits of the Act, specifically a presuit medical panel review:

19. Plaintiffs' Petition for Wrongful Death, Paragraphs VIII–XIV.

20. Plaintiffs' Petition for Wrongful Death, Paragraph XVIII.

21. Exhibit A of Defendant Mercy Hospital's Motion to Dismiss for Failure to State a Claim or Alternatively for Summary Judgment; *see also, Keys v. Mercy Hospital of New Orleans,* 485 So.2d 514, 516 (La.App. 4th Cir.1986) (noting that Mercy Hospital is a "qualified health care provide[r] under" the Act); La.R.S. 40:1299.41(A)(1) (defining "health care provider" to include hospitals licensed in Louisiana); La.R.S. 40:1299.42 (specifying requirements to be "qualified" under the Act).

22. La.R.S. 40:1299.47(A).

23. La.R.S. 40:1299.47(B)(1)(a)(i).

24. La.R.S. 40:1299.41(A)(8).

All malpractice claims against health care providers covered by this Part ... shall be reviewed by a medical review panel established as hereinafter provided for in this Section.[22]

No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.[23]

Malpractice is defined under the Act as:

any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.[24]

Louisiana courts have consistently found on those occasions in which a plaintiff brings a claim covered by the Act in a court action before the claim has been presented to a medical review panel under the Act, the plaintiff's claim must be dismissed as premature.[25] As evidenced by the extensive juris-

25. *See, e.g., Miller v. Griffin–Alexander Drilling co.,* 685 F.Supp. 960, 967 (W.D.La.1988), *aff'd,* 873 f.2d 809, 814 (5th Cir.1989); *Everett v. Goldman,* 359 so.2d 1256, 1271 (La.1978). *See also, Renz v. Ochsner Foundation Hospital/Clinic,* 420 So.2d 1008, 1009–10 (La.App. 5th Cir.1982) (maintaining a hospital's exception of prematurity for a suit arising from injuries allegedly sustained as a result of the malfunction of a medical life support system following coronary bypass surgery); *Cashio v. Baton Rouge General Hospital,* 378 So.2d 182, 184–85 (La.App. 1st Cir.1979) (maintaining a hospital's exception of prematurity in a suit for the death of a patient from an infection allegedly acquired from non-sanitary conditions during a coronary bypass operation); *Gobble v. Baton Rouge Hospital,* 415 So.2d 425, 426 (La.App. 1st Cir.1982) (maintaining the Medical Malpractice Act applies to all claims alleging malpractice, including claims for injuries resulting in death).

prudence upholding exceptions of prematurity, the Act covers "virtually any breach of duty or contract causing injury or damage." *Sibley v. Board of Supervisors of Louisiana State University*, 477 So.2d 1094, 1102 (La. 1985).

Any conduct by a hospital complained of by a patient is properly within the scope of the Louisiana Medical Malpractice Act if it can be reasonably said that it comes within the definitions of the act, even though there are alternative theories of liability. *Rogers v. Synthes, Ltd.*, 626 So.2d 775, 777 (La.App. 2d Cir.1993).

In their petition, plaintiffs specifically claim that Mercy Hospital was "negligen[t,]" and this Court must construe such an allegation as one arising under the rubric of a malpractice claim. In fact, plaintiffs subsequently concede that their "allegations against defendant Mercy partially sound in medical malpractice."[26] The above excerpts clearly indicate that the Medical Malpractice Act covers "liability for *all* negligent acts or omissions by a health care provider in providing care and services. *Sewell v. Doctor's Hospital*, 600 So.2d 577, 580 (La.1992). This Court can be left with no other finding than to conclude that Mercy Hospital's alleged negligence of which plaintiffs complain is clearly covered under, and subject to all benefits of the Medical Malpractice Act. Therefore, plaintiffs must exhaust their administrative remedies before bringing suit before this Court.

**Intentional Tort Allegations:**

■ In addition to their negligence claim against Mercy Hospital, plaintiffs also contend that the defendant hospital intentionally conspired with Dr. Moustakas to cover up any negligence and further intended to inflict emotional distress by lying to them. Theoretically, intentional tort allegations constitute causes of action which may be separated

from a claim for negligence, since malpractice refers to any *unintentional* tort or breach of contract based on health care or professional services rendered. La.R.S. 40:1299.41A(8). However, it appears to the Court that plaintiffs have attempted to escape the clear dictates of the Medical Malpractice Act by masking their allegations under the guise of an intentional tort. This Court finds little difficulty in piercing the veil and refusing to be swayed by semantic manipulations.

■ Louisiana law concerning recovery of damages due to intentional acts requires that the defendant must have desired the result or realized to a virtual certainty that the result would occur. *Smith v. Mahfouz*, 489 So.2d 409, 413 (La.App. 3d Cir.), *writ denied*, 494 So.2d 1181 (La.1986). An instances of outrageous conduct is required. *Id.*, citing *Steadman v. South Central Bell Telephone Company*, 362 So.2d 1144 (La.App. 2 Cir. 1978). In those cases cited by plaintiffs[27], the courts had no difficulty in finding the existence of outrageous conduct. These cases are clearly distinguishable from the case at bar in which plaintiffs fail to allege any outrageous conduct.

Plaintiffs do not assert that the doctor performing the angioplasty procedure intended for death to result, nor do they allege any outrageous conduct during the surgical procedure. In fact, plaintiffs noticeably do not even name the surgeon who performed the unsuccessful angioplasty operation, Dr. Bahram B. Zamanian as a defendant. Instead, plaintiffs assert that after the failed surgical procedure, defendants engaged in various "intentional acts" to cover-up any negligence.

The Court views such charges as attempts by plaintiffs to circumvent the confines of the Medical Malpractice Act. Use of the word "intent" in the pleadings is not a talisman that can convert unsubstantiated negligence

---

26. Plaintiffs' Supplemental Memorandum In Support of Plaintiff's Motion to Remand and In Opposition To Defendants' Motions to Dismiss, page 9.

27. *Jure v. Raviotta*, 612 So.2d 225 (La.App. 4th cir.1992), *writ denied*, 614 So.2d 1257 (La.1993) (alleged sexual misconduct by a physician was "unrelated to the promotion of a patient's health

or to the provider's exercise of professional expertise or skill" and therefore was beyond the scope of the Medical Malpractice Act.); *Reaux v. Our Lady of Lourdes Hospital*, 492 So.2d 233 (La.App. 3d Cir.), *writ denied*, 496 So.2d 333 (La.1986) (allegations of assault, rape, and battery by a hospital intruder did not fall within the Medical Malpractice Act).

allegations into colorable claims of true intentional torts for purposes of fulfilling an intentional tort exception to controlling legislation. *Keating v. Shell Chemical Co.,* 610 F.2d 328, 332 (5th Cir.1980). Whether defendants followed proper procedures or engaged in intentional acts of conspiracy to "cover up" is fair grist for a medical review panel, well versed in the standard practices of a hospital and those persons working within it.

Moreover, since filing their initial pleading with this Court, plaintiffs have initiated proceedings for a medical review panel to review their claims against defendants. Given that proper procedural steps have now been undertaken, this Court is of the opinion that it would be premature at this juncture for it to address allegations which fall within the ambit of opinions that a medical review panel is designed and fully competent to address. There being no *genuine* material issue that plaintiffs' claims against Mercy Hospital come squarely within Louisiana's Medical Malpractice Act, such claims must be dismissed as premature pending review by a panel of medical experts as envisioned by the Act.

**Intentional Infliction of Emotional Distress**

▇▇▇ In a further effort to seek recovery, plaintiffs assert a claim for the intentional infliction of emotional distress. This claim stands without legal footing. Louisiana Civil Code Article 2315.6(A) provides for recovery of damages to certain enumerated family members "who view an event causing injury to another person, or who come upon the scene of the event soon thereafter." The purpose of Article 2315.6(A) is to provide for compensation to certain classes of bystanders or non-participants for the mental anguish arising from the "accident or event *they witnessed.*" *Deville v. Budd Construction Co.,*

617 So.2d 570, 576 (La.App. 3d Cir.) *writ denied,* 625 So.2d 180 (La.1993).

Plaintiffs fail to meet the rigid statutory requirements under Civil Code article 2315.6. Plaintiffs do not assert that they viewed the surgical procedure or came upon the scene soon thereafter. Apparently, plaintiffs have recognized their inability to satisfy this strict standard and artfully have phrased their allegation *"as if"* they had come upon the scene of her death soon thereafter." [28] However, this wording will not suffice. Because plaintiffs are unable to meet the requisite status of a "bystander" they have no right to recovery under the statute.[29] In short, the plaintiffs have failed to state a claim for the intentional infliction of emotional distress upon which relief may be granted.

**CONCLUSION**

In summary, the plaintiffs' state law claims are preempted by the Medical Devices Act. Therefore, jurisdiction lies with this Court and judicial economy mandates that ancillary claims shall not be unnecessarily severed. Additionally, this Court will not allow plaintiffs to escape the Medical Malpractice Act by engaging in semantic manipulations in their effort to find support under alternative liability theories.[30] All negligence claims, despite clever disguises, must first be reviewed by a medical review panel. Only after review by those qualified to render expert analysis can this Court entertain the matters currently before it. The Court notes however, that plaintiffs' damages claim for the intentional infliction of emotional distress is without merit and therefore dismisses that claim with prejudice. Accordingly, for all of the foregoing reasons,

**IT IS ORDERED** that the plaintiffs' Motion to Remand is hereby **DENIED.**

**IT IS FURTHER ORDERED** that defendant, Mercy Hospital's Motion for Summary

---

**28.** Plaintiff's Petition for Wrongful Death, Paragraph XVIII.

**29.** *See, Garza v. National American Insurance co.,* 807 F.Supp. 1256, 1259–60 & n. 10 (M.D.La. 1992); *Thibodeau v. Mayor and Councilmen of Morgan City,* 619 So.2d 595, 599 & n. 4 (La.App. 1st Cir.), *writ denied on this ground and remanded on other grounds,* 629 So.2d 362 (La.1993).

**30.** *See, Cashio,* 378 So.2d at 184–85, *cited with approval in Wyble v. St. Luke General Hospital,* 415 So.2d 622, 624 (La.App. 3d Cir.1982), *and cited with further approval in Renz,* 420 So.2d at 1009.

Judgment is hereby GRANTED and plaintiffs' claims against it are DISMISSED AS PREMATURE.

**IT IS FURTHER ORDERED** that plaintiffs' claim for the intentional infliction of emotional distress against defendant, Mercy Hospital is DISMISSED with prejudice.