Nelly **CHERTKOV**, Plaintiff,

v.

**TPLC, INC.** d/b/a Telectronics Pacing Systems, et al., Defendants.

Civil Action No. 3:95–CV–2401–D.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 5, 1996.

Phillip L. Brown of Law Offices of Windle Turley, P.C., Dallas, TX, for plaintiff.

James D. Ebanks of Giessel, Barker & Lyman, Houston, TX, and Charles P. Goodell, Jr., Richard M. Barnes and Andrew Gendron of Goodell, DeVries, Leech & Gray, LLP, Baltimore, MD, for defendant.

## MEMORANDUM OPINION AND ORDER

FITZWATER, District Judge.

Plaintiff Nelly Chertkov's ("Chertkov's") motion to remand this case presents the question whether plaintiff's state-law claims concerning a J-shaped lead wire implanted as part of a pacemaker device are preempted by the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–392 (1988 & Supp.1996). Concluding that the claims are preempted, the court denies plaintiff's motion to remand.

### I

Plaintiff brought suit in state court against defendants TPLC, Inc. d/b/a Telectronics Pacing Systems ("TPLC") and Pam Linnstaevt ("Linnstaevt"), distributor of the TPLC pacemaker, alleging that TPLC manufactured and distributed a defective lead device, and that it failed to disclose known defects in its lead device, which was implanted in plaintiff.

In November 1994, after being cited by the Food and Drug Administration ("FDA") for manufacturing deficiencies and failing to report certain information to the FDA, TPLC announced that it was withdrawing its J-shaped pacemaker lead from distribution.[1] Recent problems with the leads revealed that the stiff wire used to retain the lead's shape could break through its insulation, causing damage to the heart. Fractures in the lead wire are detectible by X-ray.

Plaintiff brought suit against defendants in Texas state court, alleging fraud, breach of express and implied warranties, intentional infliction of emotional distress, negligence, and defective design. The state court petition did not allege any federal causes of action. Defendants removed the action to this court on the basis of federal question jurisdiction. Defendants contend that suits concerning the pacemaker lead, which is a Class III medical device, are preempted by the MDA. Defendants maintain that the express preemption provision found in the MDA renders plaintiff's claims federal in nature, and therefore made the case removable on the basis of federal question jurisdiction.

### II

#### A

A defendant may only remove an action to federal court if the case could have been filed originally in federal court. *See* 28 U.S.C. § 1441(a). TPLC removed the instant action on the basis that it is one that lies within the provisions of 28 U.S.C. § 1441 in that it is an action arising under the laws of the United States, specifically, the MDA.

Plaintiff moves to remand, contending that there is no federal question and there is not complete diversity of citizenship. Plaintiff posits that defendants' preemption arguments are merely a defense, and that the existence without more of a federal defense does not provide a sufficient basis for remand. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983).

#### B

 Ordinarily, federal question jurisdiction is determined by the well-pleaded complaint rule. "Removal is not possible unless the plaintiff's 'well pleaded complaint' raises issues of federal law sufficient to support federal question jurisdiction." *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d

---

**1.** A pacemaker lead is a wire connecting a pacemaker's pulse generator—which electronically stimulates the heart—to the patient's heart tissue. The wire stimulates the heart and monitors its beating.

1014, 1017 (5th Cir.), *cert. denied,* 508 U.S. 956, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993). However, an exception to the well-pleaded complaint rule has been created in certain areas "in which Congress has 'so completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987)). This exception is a narrow one. *See Richardson v. United Steelworkers of Am.,* 864 F.2d 1162, 1169 (5th Cir.1989), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990). But "[i]f a federal cause of action completely preempts a state cause of action, any complaint that is within the scope of the federal cause of action necessarily arises under federal law, and similarly, any claim purportedly based on that pre-empted state claim is considered, from its inception, a federal claim, and therefore arises under federal law also." *Richardson v. Advanced Cardiovascular Sys., Inc.,* 865 F.Supp. 1210, 1213 (E.D.La.1994) (citing *Caterpillar v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987)). Defendants argue that the complete preemption doctrine applies in the present case.

## C

■ The Fifth Circuit has held that the intent of Congress is the focus of inquiry in determining whether removal is appropriate under the complete preemption doctrine. *See Trans-World Airlines, Inc. v. Mattox,* 897 F.2d 773, 778–79 (5th Cir.), *cert. denied,* 498 U.S. 926, 111 S.Ct. 307, 308, 112 L.Ed.2d 261 (1990). Preemption does not apply unless the clear and manifest purpose of Congress was to supersede state law, or where the federal legislative scheme is so pervasive that one could reasonably infer that Congress left no room for the states to supplement it. *See Davis v. Davis,* 188 B.R. 544, 548 (N.D.Tex.1995) (Fitzwater, J.) (citing *First Gibraltar Bank, FSB v. Morales,* 19 F.3d 1032, 1039 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994), *vacated on other grounds,* 42 F.3d 895 (5th Cir.1995)).

■ Congress provided for preemption of certain claims related to medical devices explicitly in the MDA, which provides:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a) (Supp.1996). Because the MDA explicitly provides for preemption, the court need not consider whether preemption is implied, and thus limits its inquiry to the meaning of the statutory language. *Richardson,* 865 F.Supp. at 1214.

■ In assessing the intent of Congress, the court "begin[s] with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *FMC Corp. v. Holliday,* 498 U.S. 52, 57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661–62, 83 L.Ed.2d 582 (1985)). Section 360k preempts "any requirement" that "relates to" a device's safety or effectiveness. The gravamen of TPLC's argument is that the phrase "relates to" in § 360k(a)(2), read with its ordinary meaning, "expresses a broad preemptive purpose." *Cf. Morales v. Trans World Airlines,* 504 U.S. 374, 383–85, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). TPLC argues that the language of § 360k(a)(2) parallels the language in the preemption provisions of the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1) (Supp.1996), and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a), both of which have been held to completely preempt state-law causes of action.

■ The Supreme Court has held that this "relates to" language makes the expansive breadth of preemption apparent. The phrase "relates to" in § 514 of ERISA, 29 U.S.C. § 1144(a), has been held to preempt

state laws that have "a connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Thus, whether or not a plaintiff phrases a claim concerning an employee benefit plan as a federal cause of action, removal is appropriate. *See, e.g., Metropolitan Life,* 481 U.S. at 64–66, 107 S.Ct. at 1546–48. *See also Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430 (concerning preemptive scope of Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA")). Similarly, the Supreme Court has held the "relating to" language of the ADA to indicate preemption of expansive scope, *Morales,* 504 U.S. at 385–87, 112 S.Ct. at 2038, and the Fifth Circuit has held that ADA preemption supports removal, *Trans World Airlines,* 897 F.2d at 780–81. Other district courts within this circuit have held that the language of the MDA's preemption provision is "broad sweeping," and provides a basis for removal in accordance with the "complete preemption" doctrine. *See, e.g., Richardson,* 865 F.Supp. at 1214. The court agrees. The language in § 360k that the MDA preempts "any requirement" that "relates to" the safety and effectiveness of a medical device supports a reading of complete preemption.

### D

■ The preemptive force of the MDA is further supported by the regulatory scheme created for medical devices. The MDA classifies medical devices in three categories based upon the risk they pose to the public. Class III devices, like the lead wire at issue in the instant case, are subject to the most exacting requirements. *See* 21 U.S.C. § 360c(a)(1)(C).

Class III devices are subject to pre-marketing approval of their components, design, manufacturing, and labeling. The FDA can deny approval of a medical device if "there is a lack of a showing of reasonable assurance" of the device's safety. 21 U.S.C. § 360e(d)(2). In addition, the FDA monitors the safety and effectiveness of medical devices by imposing reporting requirements on medical establishments that encounter difficulties with a medical device. 21 U.S.C.

§ 360i(b)(1)(A). "In requiring FDA approval of manufacturing methods as well as labeling and packaging, the entire MDA scheme for Class III devices endeavors to determine and fully regulate the intended purpose of the device, and to ensure a reasonable level of safety for its users." *Richardson,* 865 F.Supp. at 1215. In so fully regulating this area, Congress expressed an intent to litigate issues involving the safety and effectiveness of medical devices in federal court.

Plaintiff's complaint alleges several claims seeking damages for TPLC's and Linnstaevt's failure to warn her of the lead's dangerousness. A failure to warn claim, by its nature, "relates to" the safety and effectiveness of the lead, and implicates the specific labeling and warning regulations set out in the MDA. The Fifth Circuit has specifically held claims of this type to be preempted by the MDA. *See, e.g., Feldt v. Mentor Corp.,* 61 F.3d 431, 436 (5th Cir.1995) ("Feldt's claims are preempted to the extent they are grounded on allegations of inadequate warnings or labeling."), *petition for cert. filed,* 64 U.S.L.W. 3469 (U.S. Dec. 26, 1995); *Reeves v. AcroMed Corp.,* 44 F.3d 300, 306 (5th Cir.1995) (holding MDA preempted failure to warn claim despite allegations that manufacturer misled FDA and violated FDA regulations concerning disclosure of product's intended uses), *cert. denied,* —— U.S. ——, 115 S.Ct. 2251, 132 L.Ed.2d 258 (1995); *Stamps v. Collagen Corp.,* 984 F.2d 1416, 1422 (5th Cir.) (noting that failure to warn and inadequate labeling claims have been held preempted, and that actions "based upon the defective design and manufacture" of a Class III device are preempted because the premarketing approval process for such devices "includes FDA scrutiny and approval of these particular aspects of a device") (footnote omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993). Thus plaintiff has alleged claims that are necessarily federal, and which would support federal jurisdiction under 28 U.S.C. § 1331. Removal is therefore appropriate.

### E

Plaintiff argues, however, that preemption in this case is merely a defense, and cannot

therefore provide a basis for removal. In support of this contention, plaintiff cites *Green v. Telectronics Pacing Sys., Inc.*, No. 95C1977, slip op. at 4, 1995 WL 215045 at *2 (N.D.Ill.1995), which held that "[n]o provision even remotely comparable to the one relied on in *Avco [Corp. v. Aero Lodge No. 735, IAM*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) ] (as to LMRA § 301) and in *Metropolitan Life* (as to ERISA) exists in the [MDA]." *Id.* The *Green* court then concluded that the preemption argument was nothing more than a federal defense.

As the court discusses above, *see supra* § II(C), there is language in § 360k of the MDA that compares closely to the broad preemption language found in the LMRA and ERISA. Consequently, the court rejects the reasoning set out in *Green.* The court holds instead that TPLC's preemption argument is more than a defense because Congress has completely preempted state law actions that relate to the safety and effectiveness of medical devices, or that encroach upon areas specifically regulated by the FDA.[2]

 Plaintiff further argues that there can be no complete preemption because some of her claims are not subject to preemption. The court disagrees. Preemption of one count in a multicount complaint subjects the case to removal. The court may thereafter exercise jurisdiction over the remaining state-law claims through supplemental jurisdiction. *See, e.g., Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 817 n. 15, 106 S.Ct. 3229, 3236 n. 15, 92 L.Ed.2d 650 (1986); 28 U.S.C. § 1367. Because the court concludes that federal jurisdiction may be founded upon Chertkov's failure to warn and defective design causes of action, the court need not reach the remaining claims in plaintiff's complaint.

\*　　\*　　\*　　\*　　\*　　\*

Litigation of certain of plaintiff's claims would necessarily interfere with the FDA's determinations regarding the safety, testing, manufacture, design, and labeling of Class III devices. Chertkov may not avoid these strictures by formulating her complaint in terms of state law alone. Remand would undermine the Congressional purpose of subjecting the safety and efficacy of medical devices to uniform scrutiny by the FDA. "[W]here the scheme of federal legislation and regulation is so comprehensive, such as the MDA, that federal law effectively, even if tacitly, displaces and subsumes all state-law claims, federal-question removal is allowed." *Richardson*, 865 F.Supp. at 1215 (footnote omitted). Accordingly, plaintiff's motion to remand is denied.

**SO ORDERED.**

---

2.　The court's ruling is thus consistent with *Feldt,* 61 F.3d at 437, cited for the proposition that claims for design defect survive preemption *in the absence of* regulations specifically applying to the device's design, and with *Slater v. Optical Radiation Corp.*, 961 F.2d 1330 (7th Cir.), *cert. denied*, 506 U.S. 917, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992), also cited by plaintiff. *Slater* held that the MDA's preemption did not extend to actions for medical malpractice arising out of the implantation of a Class III device. *Id.* at 1334. Such suits do not concern the safety and effectiveness of medical devices, but rather, the skill of the physicians using them.